THE NEW JERSEY BUILDING, LOAN AND INVESTMENT
COMPANY

*v.*

IDA M. L. BACHELOR et al.

A mortgage given by the grantee of land to a person other than the grantor, contemporaneously with the delivery of the deed vesting title, is entitled to priority over a mechanics' lien for work done and materials furnished to the grantee under a contract partly performed before the title passed, only to the extent that it secures purchase-money.

On final hearing.

*Mr. Barton B. Hutchinson,* for the complainant.

*Mr. Isaac C. Kennedy,* for the defendant McFarlan.

*Mr. James Benny,* for the defendant Walters.

STEVENS, V. C.

The complainant's mortgage for $3,300 is dated July 27th, 1893, acknowledged July 28th, 1893, and recorded September 21st, 1893. The defendant McFarlan's mortgage for $1,500 is dated May 31st, 1893, acknowledged July 27th, 1893, and recorded August 1st, 1893. The defendant Walters recovered judgment on his lien claim for $2,323.96. The claim was filed June 18th, 1894, and was made by him as contractor for work done and materials furnished in the making of additions to a dwelling-house upon the mortgaged premises. The work was begun about June 20th, 1893, and completed about November 15th, 1893.

The questions raised by the pleadings and proofs relate to the priorities of these three encumbrances.

So far as the mortgages are concerned, the evidence satisfies me that while the mortgage of McFarlan is prior in date, the

agreement between the parties was that it was to be postponed to the complainant's mortgage. That such an agreement may lawfully be made is unquestionable. *Hopler* v. *Cutler, 34 Atl. Rep. 746.* The complainant is, therefore, as against the defendant McFarlan, entitled to be first paid.

The mortgage of the defendant McFarlan, being a purchase-money mortgage, is entitled to priority over the lien claim of the defendant Walters. This is admitted. The important question is whether the lien of the complainant's mortgage is prior to the mechanics' lien either in whole or in part. The pertinent facts are these: The defendant Ida Bachelor was desirous of purchasing a house and lot belonging to the defendant McFarlan. Not having the money to make the purchase, her husband applied to the complainant, a building loan association, for a loan. The association having agreed to make it, Mrs. Bachelor was allowed by the vendor to take possession before she took title. After doing so, she contracted with the defendant Walters to make certain additions to the house. Walters began work on or about June 20th, and did a considerable portion of it before the deed was delivered. On the evening of July 27th, at Bayonne, McFarlan, the vendor, signed and acknowledged his deed to Mrs. Bachelor and formally delivered it to her, and she signed and acknowledged her mortgage to McFarlan and formally delivered it to him. No money was then paid, and the deed was immediately redelivered to McFarlan, it being understood that he would, on the next morning, take the mortgage to be given to the building loan association to its office in Trenton, and there receive the whole amount of the loan. Of this loan he was to retain $2,000, and the balance he was to hand over to Mrs. Bachelor. Accordingly, on the next morning (July 28th), Mrs. Bachelor signed the bond and mortgage to the building association, and acknowledged the latter before its local attorney. They bore date on July 27th. After they were acknowledged they were taken by the attorney to McFarlan, who, on receiving them, went to Trenton and delivered them, and also the deed, to the company's secretary, at its office. He received a check for $2,970, $2,000 of which he retained, and the balance of which he gave

to Mrs. Bachelor. The deed, bond and mortgage were immediately sent by the company for record to the clerk's office in Hudson county, instead of to the register's, and the clerk not handing them to the register, they were not in fact recorded until the 21st day of September following.

On this state of facts, which has the prior lien, the building association or Walters?

There are several decisions on the general question.

In the first place, it is settled that a purchase-money mortgage given by a vendee to a vendor simultaneously with the delivery of the deed, will take precedence of a mechanics' lien claim for work done for the vendee before he acquires the legal title. *Mackintosh* v. *Thurston, 10 C. E. Gr. 248; Lamb* v. *Cannon, 9 Vr. 362; Wallace* v. *Silsby, 13 Vr. 1.*

In the second place, it is also settled that, if the purchase-money or a part of the purchase-money be advanced by a third person, a mortgage given by the vendee to him simultaneously with the delivery of the deed by the vendor, will have like precedence. *Bradley* v. *Bryan, 16 Stew. Eq. 396; Hopler* v. *Cutler, supra.*

In the case in hand a part of the sum lent went to pay the purchase-money, and a part of it was paid to Mrs. Bachelor. What she did with it does not appear. Is this mortgage, under the circumstances, entitled to priority over the mechanics' lien, and, if so, to what extent?

Although the delivery of the deed and the McFarlan mortgage took place on the evening of the 27th, and the delivery of the mortgage to the building association took place on the following day, I still think that the transaction was a single one and that it was the intention of the parties that it should be so considered. This is apparent from the fact that McFarlan kept possession of the deed conveying the title until he delivered it to the association. At the trial it appears to have been conceded by all parties that McFarlan contemplated making no final delivery of it until then. (See colloquy at conclusion of McFarlan's evidence.) On this assumption it is plain, under the rules of law I have stated, that the lien of the building loan association is prior to

the Walters lien so far as the money advanced was used to pay purchase-money.

It is, however, argued by Walters' counsel, that as to the rest of the money secured, the Walters lien is prior.   The contention is that, to the extent that the land vests in the grantee beneficially, the lien of the mechanic must prevail.   I am of opinion that this contention is well founded.

The claim of the vendor of property, who takes a mortgage to secure purchase-money, rests on the most satisfactory grounds. Looking at the substance of the transaction, all that the grantor really parts with and all that the grantee justly gets is the equity of redemption, and it is this equity alone which should become subject to the claim of the vendee's creditors.   By an extension of the rule, a third person who advances purchase-money, if he take a mortgage simultaneously with the passing of the title, is permitted to stand in the shoes of the vendor and to have the same protection that the vendor has.   In this case, too, equity declares that all that the grantee really acquires is the equity of redemption.   It would seem clear, on principle, that this ought to be the limit of the extension, and that whatever interest does vest in the grantee beneficially should become subject to such liens and interests as the law imposes upon land in the hands of an owner.

The test of momentary seizin cannot be the only one applicable to a case of this kind.   If the grantor should convey to the grantee, in satisfaction of a prior debt due from the grantor to the grantee, would the grantee be permitted to mortgage to a third person with such effect that his mortgage would be allowed to prevail over the widow's dower and the claims of prior judgment and lien creditors?   If so, on what principle?   Simply because he mortgaged the instant he got the conveyance, and not some appreciable period of time, be it a minute or an hour, afterwards?   If the court were to hold the test of momentary seizin to be the only one in such cases, it would not only violate legal rules but it would defeat the plainly-expressed intention of the legislature.   It was, without doubt, the legislative intention, by the Dower act, to endow the widow of every beneficial estate of

inheritance of which her husband was seized at *any* time during the coverture; by the acts respecting judgments and mechanics' liens, to bind the beneficial interest of the debtor in the land by the lien of the judgment or mechanics' lien *as soon* as this land became vested in him. In other words, the legislative design was to prevent the husband in the one case and the debtor in the other cases from making *any* use of his beneficial interest that would tend to defeat the just claim of the dowress or of any creditor. The distinction is clear. If the estate comes into the hands of the grantee subject to legal or equitable liens, such liens will not be postponed to those of his own creation. But if he take it free from lien, he cannot create liens which will take precedence over the statutory ones. And here the technical rules of conveyancing come in to further the intention of the legislature. It is elementary that the mortgagor cannot make a legal conveyance of land by way of mortgage until he becomes seized of that land; but at the moment of seizin—while he is, so to speak, in the act of becoming seized—the statutory lien fastens itself upon the estate, and any conveyance of it by the grantee must follow and not precede the lien thus attaching.

The case of the purchase-money mortgage is an exception in point of form and not of substance. For in substance, as I have said, the purchaser only gets, as the result of the one entire transaction, an equity of redemption. This is well illustrated by the case of *Wallace* v. *Silsby, 13 Vr. 1*, a case at law, and therefore all the more significant. The question there was whether deeds of conveyance and reconveyance of certain minerals were to be regarded as parts of one transaction in such manner as to prevent the first conveyance from vesting a greater interest in the subject-matter of the grant than the parties intended should be vested beneficially. It was held that they must be regarded as parts merely of one entire transaction; that the intention of the parties was to put the seizin in the grantee, under whom the plaintiff in that case made his inequitable claim, for a particular purpose and only for an instant, and that the court, disregarding "the outward figure and mode" of the business, would look at its substance and give effect to it as the

New Jersey Bldg., Loan and Invest. Co. *v.* Bachelor.

parties really intended it should have effect.    In the course of his judgment, the chief-justice quotes with approval the following passage from Chancellor Kent: "A transitory seizin for an instant when the same act that gives the estate to the husband conveys it out of him, as in case of a conusee of a fine, is not sufficient to give the wife dower.    The land must vest in the husband beneficially for his own use, and then, if it be so vested but for a moment, provided the husband be not the mere conduit for passing it, the right of dower attaches."    The chief-justice then proceeds: "It is obvious that all the considerations here given for the existence of this doctrine, in its application to dower, should be equally potent in their bearing on the law of the case now under consideration, for here, as in the case of the momentary seizin of the husband, the grantor of the plaintiff was not beneficially seized even for a moment in the ore forming the subject of litigation."

The case of *Mackintosh* v. *Thurston, 10 C. E. Gr. 242,* is not opposed to this view.    It was there held that a purchase-money mortgage has preference over lien claims for work done and materials furnished in buildings and improvements put upon the mortgaged premises by the purchaser between the execution of the contract of purchase and the conveyance, not only to the extent of the purchase-money, but also for all advances made in accordance with the written contract of purchase for building the houses, improving the grounds and paying taxes.    Here it will be perceived that there was a written contract stipulating for a conveyance on certain conditions.    The grantee was to acquire the property only by conforming to those conditions, and the estate was to vest in him beneficially subject thereto.    The principle of decision is the same as that in *Wallace* v. *Silsby.* The same remark is applicable to *Clark* v. *Butler, 5 Stew. Eq. 664.*    Vice-Chancellor Van Fleet was there considering the case of a mortgagee who released in favor of a purchaser of part of the lands mortgaged and then took a new mortgage from that purchaser, crediting the amount of the new mortgage upon the old.    He held, as on principle he was required to hold, that the new mortgage was prior to a previously-existing mechanics' lien.

. It will be perceived that both of these cases gave to the vendee just such beneficial interest in the property as by the contract of purchase it was intended that he should acquire, but the case of *Gibbs* v. *Grant, 2 Stew. Eq. 420,* appears to go further. There, as here, work was done before the vendee got the legal title, and there, as here, a third person advanced to the grantee money, only part of which went to pay purchase-money. Some of it went to workmen employed on the building, and the rest of it, we are told, went to the vendee. What he did with it, the case does not show. The chancellor appears to have held that the entire amount of the mortgage had priority over the lien claim. The question here discussed does not seem to have been distinctly raised and passed upon, and hence the question may still be regarded as open. The cases cited by the chancellor in his opinion are no more than illustrations of the rule as I have stated it. I am, therefore, of opinion that in order to give proper effect to the twenty-third section of the Mechanics' Lien act, it must be held that the lien attaches to the estate which comes into the hands of the grantee to the full extent that he acquires a beneficial interest in it, and that such lien has priority over any liens which the grantee may seek to create therein.

Had the money which went to pay purchase-money been secured by one mortgage and the rest of the money lent been secured by another, given at the same time, the former mortgage would, in my view, have priority over the mechanics' lien claim, and the latter would not. That the mortgagor has secured the whole loan by a single mortgage cannot change the result. Only to the extent that the mortgage secures purchase-money will it have priority over the lien of Walters.

A further question was raised in respect of the first mortgage. It was contended that as against the subsequent encumbrancers it was a valid lien only for the amount actually paid, viz., $2,970, and not for its face, $3,300. The difference between these two amounts represents the premium claimed by the association of which Mrs. Bachelor was a stockholder. The evidence is that this premium, together with the monthly payments required to be made by the bond and mortgage, go, with

all the other premiums and payments received from other members, into a general fund, out of which dividends are made on the stock. It has been so often decided that contracts of this kind are valid that the question is not an open one. *Mechanics' Loan Association* v. *Conover, 1 McCart. 219; on appeal, 2 C. E. Gr. 497; People's Building Association* v. *Furey, 2 Dick. Ch. Rep. 411; Bowen* v. *Lincoln Building Association, 6 Dick. Ch. Rep. 272.*

It was said that this case differs from the cases cited in that here the money was loaned without any bidding. I do not understand that this is material. It does not affect the ground upon which transactions of this kind are vindicated. *Clarksville Building and Loan Association* v. *Stephens, 11 C. E. Gr. 355.*

A question is also made in reference to the amount of interest and premiums due. The bond and mortgage were given on July 27th, 1893, and there were three payments upon the stock and two payments of interest. The payments upon the stock were made in the months of July, August and September, 1893; the payments of interest in July and August. As the mortgagor thereafter made default, the principal sum of $3,300 became, by the terms of the bond and mortgage, payable in December, 1893. If anything more is claimed than this principal, with interest thereon at five per cent. from December, 1893, I will hear counsel as to whether, on the facts of the case, such claim is sustainable.